UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:24-cv-41-MEO

| ELIJAH E. PACHECO, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
|  | ) |  |
| ROBERT ANDERSON, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on Defendants Robert Anderson, Shelby Wyatt, and Johnathan Call's Motion for Summary Judgment [Doc. 28], and Motion to Seal [Doc. 27].

I.  BACKGROUND

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was a pretrial detainee at the Wilkes County Jail ("WCJ"). The unverified Complaint passed initial review against Robert Anderson and Johnathan Call, WCJ lieutenants, and Shelby Wyatt, a WCJ captain, for failing to protect the Plaintiff from a physical assault by other inmates. [Doc. 1: Complaint; Doc. 9: Order on Initial Review]. The Plaintiff seeks compensatory and punitive damages. [Doc. 1 at 5; *see* Doc. 9 at 2 n.4, 4-5 (Plaintiff's claims for injunctive relief did not survive initial review)].

The Defendants filed a Motion for Summary Judgment [Doc. 28: MSJ] and supporting exhibits, some of which they have moved to seal [Doc. 27: Motion to Seal]. Thereafter, the Court entered an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 30: *Roseboro* Order]. The

Plaintiff filed a verified Response [Doc. 32: MSJ Response], the Defendant filed a Reply [Doc. 35: MSJ Reply], and the Plaintiff filed a Surreply [Doc. 37: Surreply]. These matters are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. *See id.*; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered

by the Court on summary judgment. *Kennedy v. Joy Technologies, Inc.*, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott*, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.[1]

The Plaintiff entered the WCJ as a pretrial detainee on July 19, 2022. [Doc. 28-2: Anderson Affid. at ¶ 5]. On July 29, 2022, the Plaintiff was assigned to D-Pod, a medium-security open

---

[1] The Plaintiff's Complaint is unverified and cannot be considered as a forecast of evidence. *See*

housing pod where inmates typically have a cellmate and they enjoy some social privileges. [*Id.* at ¶¶ 6-7]. The Plaintiff's cellmate was James Robinson. Plaintiff was uncomfortable with Robinson because he was charged with murder, and because Robinson had told Plaintiff that a psychiatric evaluation found that he has an aggressive and agitated mental state which precludes him from having a cellmate. [Doc. 28-6: MSJ Ex at 8-9 (Plaintiff's deposition excerpt); *see* Doc. 28-2: Anderson Affid. at ¶ 8; Doc. 28-2: MSJ Ex at 7 (Aug. 4, 2022 Jail Incident Report)].

On August 4, 2022, the Plaintiff told Officer Kyle Hughes, who is not a defendant in this case, that Robinson had threatened him by saying something like "I'm going to get you hurt…." [Doc. 28-6: MSJ Ex at 5-6; Doc. 32: MSJ Response at 1; *see* Doc. 28-2: MSJ Ex at 7]. Inmate Robinson told the officer that he did not want to continue sharing a cell with the Plaintiff because of noise and hygiene concerns. [Doc. 28-2: Anderson Affid. at ¶ 9]. Officer Hughes immediately separated the two, and the Plaintiff was placed temporarily in H-Pod, a maximum-security housing unit (administrative segregation) where inmates have no cellmates and social privileges are limited. [*Id.* at ¶¶ 10-11].

The Plaintiff was frequently reassigned between H-Pod and G-Pod due to rule violations, suicide watch, and Plaintiff's own requests. [*Id.* at ¶ 14]. The Plaintiff submitted written transfer requests seeking reassignment to another living area in WCJ on February 25, May 18, and June 18, 2023. [*Id.* at ¶ 15]. The Plaintiff also complained twice during May 2023 that he was being

---

generally *Goodman v. Diggs*, 986 F.3d 493 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes).

threatened and bullied, however, the Plaintiff refused to provide information so that the matter could be investigated. [*Id.* at ¶¶ 16-17].

On or about May 31, 2023, the Plaintiff was placed on lockdown in the H-Pod for a disciplinary infraction. [Doc. 28-3: Call Affid. at ¶ 14]. Lieutenant Call told the Plaintiff at some point after the hearing that the Plaintiff's most recent request for release from administrative segregation would be approved, and that he would be reassigned to the D-Pod after Plaintiff completed lockdown. [*Id.* at ¶ 15]. Call makes every effort to accommodate inmates' requests to be reassigned to a different pod so long as there are legitimate reasons for the request and such would not compromise order and discipline at WCJ. [*Id.* at ¶ 16]. Because the Plaintiff was previously housed in H-Pod, he was required to spend time in D-Pod or A-Pod to determine whether he could acclimate to a less restrictive housing environment. [*Id.* at ¶ 17]. Call reassigned the Plaintiff to D-Pod pursuant to WCJ policy because there were few suitable placement options due to the lack of housing availability and Plaintiff's housing eligibility. [*Id.*]. Call asked Plaintiff whether he had any concerns about the transfer, and the Plaintiff voiced none. [*Id.* at ¶ 15].

Lieutenant Call approved the Plaintiff's request for a housing reassignment in late June 2023, and he reassigned the Plaintiff to a private cell on D-Pod. [*Id.* at ¶¶ 18, 21, 24]. Inmate Robinson was also being housed in D-Pod at that time. [*Id.* at ¶ 19]. Robinson had never been involved in fights at the WCJ, and the only issue that had ever occurred between the Plaintiff and Robinson was the Plaintiff's report of fear from nearly a year earlier. [*Id.* at ¶ 20]. When Call approved the reassignment, neither he nor the other Defendants thought that the Plaintiff was particularly vulnerable to a physical attack in D-Pod. [*Id.* at ¶¶ 20, 24, 26-27; *see* Doc. 28-2: Anderson Affid. at ¶¶ 31-32; Doc. 28-4: Wyatt Affid. at ¶¶ 22, 24]. Wyatt was not involved in making any decision regarding Plaintiff's transfer or reassignment. [Wyatt Affid. at ¶ 13]. Call

believed that transferring the Plaintiff to D-Pod was reasonable and that it complied with all applicable laws, rules, policies, and regulations. [Doc. 28-3: Call Affid. at ¶¶ 24, 26-27]. The Plaintiff did not make any complaints after he returned to D-Pod on June 27, 2023. [*Id.* at ¶ 22].

On July 9, 2023, 12 days after the Plaintiff returned to D-Pod, there was a physical altercation between the Plaintiff, Inmate Robinson, and Inmate Joshua Allen. [*See* Doc. 28-2: MSJ Ex at 16 (July 9, 2023 Jail Incident Report)]. Officers Brenden Prevette, Cody White, Harrison Tilley, Ian Grant, and Jonathan Patrick, none of whom are defendants in this case, responded and stopped the fight. [Doc. 28-2: Anders Affid. at ¶ 25; Doc. 28-2: MSJ Ex at 16]. Wyatt, Anderson, and Call did not witness or respond to the July 9 altercation. [Doc. 28-4: Wyatt Affid. at ¶ 15; Doc. 28-2: Anderson Affid. at ¶ 23; Doc. 28-3: Call Affid. at ¶ 23].

Officers White and Tilley secured the Plaintiff in H-Pod and asked whether the Plaintiff had any injuries requiring treatment. [Doc. 28-2: MSJ Ex at 16]. The Plaintiff said that he was "alright." [*Id.*]. Later that day, the Plaintiff submitted a sick call complaining of swelling and migraines. [Doc. 28-5: MSJ Ex at 1 (July 9, 2023 3:48 PM Kiosk Message)]. The Plaintiff received x-rays of his skull and shoulder the next day, which were normal. [*See id.*; Doc. 28-5: MSJ Ex at 2 (July 10, 2023 QMX Mobile Health Report)]. On July 16, 2023, the Plaintiff requested an MRI of his shoulder. [Doc. 28-5: MSJ Ex at 3 (July 16, 2023 2:33 PM Kiosk Message)]. The next day, a medical provider offered Plaintiff a cortisone injection, which he declined, and ibuprofen, which Plaintiff said he would think about. [*Id.* (July 17, 2023 handwritten notes)]. The Plaintiff submitted additional requests for medical treatment in September 2023 and January 2024. [Doc. 28-5: MSJ Ex at 4 (Sept. 3, 2023 2:20 PM Kiosk Message; Sept. 4, 2023 handwritten notes); *Id.* at 5 (Sept.

18, 2023 8:27 PM Kiosk Message); Sept. 25, 2023 handwritten note); *Id.* at 6 (Jan. 28, 2024 4:41 AM Kiosk Message; handwritten notes)].

The Plaintiff received a disciplinary infraction for the fight, and Inmates Robinson and Allen were charged criminally for the incident. [*See* Doc. 28-2: MSJ Ex at 18 (Disciplinary Hearing Record); Doc. 28-2: Anderson Affid. at ¶ 30].

The Defendants have filed video footage of the July 9 incident which shows the following, with progress times noted for reference:

| | |
|---|---|
| 00:01 | Several inmates appear to be arguing the dayroom. |
| 00:55 | Plaintiff removes his shoes and rolls down his jumpsuit top. |
| 01:34 | Plaintiff assumes a fighting stance opposite Inmate Robinson. |
| 03:28 | Plaintiff and other inmates continue to argue. |
| 09:03 | Inmate Allen hits Plaintiff, who falls to the floor, and the Plaintiff and Allen struggle on the floor while Inmate Robinson kicks Plaintiff repeatedly. |
| 09:37 | Officers respond and separate the inmates. |
| 10:54 | Plaintiff is escorted out of the dayroom. |

[Doc. 29: Notice of Manual Filing].

## IV. DISCUSSION

### A. Failure to Protect

The Complaint does not specify whether Plaintiff is suing the Defendants in their individual or official capacities. The Court will address both theories in an abundance of caution. *See Haines v. Kerner*, 404 U.S. 519 (1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers).

To establish individual-capacity liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights."

Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted).

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n. 55 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (quoting *Monell*, 436 U.S. at 691). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." *Moore v. City of Creedmoor*, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Monell*, 436 U.S. at 694).

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect and medical claims). A pretrial detainee states a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate governmental purpose' or is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*,

8

576 U.S. 389, 398 (2015)). To be sure, however, it remains insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611-12.

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact with regards to the Defendants' failure to protect him from an unreasonable risk of harm. The forecast of evidence in the light most favorable to the Plaintiff demonstrates that: on August 4, 2022, the Plaintiff reported that Inmate Robison threatened him, and the Plaintiff was immediately removed from D-Pod; upon Plaintiff's request for transfer, Defendant Call reassigned the Plaintiff to D-Pod where Inmate Robinson resided approximately 11 months later; Defendant Wyatt was not involved in the transfer decision; none of the Defendants had a reason to believe that the Plaintiff was susceptible to violence by Robinson or any other inmate in D-Pod at that time; the Plaintiff did not object before or after the reassignment; and the Plaintiff was assaulted by Robinson and another inmate 12 days after Plaintiff returned to D-Pod.

The Plaintiff has not forecast evidence that the Defendants knew or should have known that Inmate Robinson still posed a serious risk to the Plaintiff's safety at the time of the reassignment, or that their failure to recognize that such a risk existed was anything more than negligent. *See, e.g., Carmona v. Martin*, No. 23-6930, 2024 WL 4490695 (4th Cir. Oct. 15, 2024) (affirming summary judgment for defendants where detainee's vague complaint that he thought he would be attacked if he were assigned to a certain housing block was inadequate to establish that a reasonable official in the circumstances would have appreciated the high degree of risk involved in placing him there such that the consequences of the defendants' conduct would be obvious); *Carpenter v. Trammel,* No. 1:18-cv-16, 2019 WL 2088424, at *7 (W.D.N.C. May 13, 2019) (plaintiff cannot recover punitive damages under § 1983 without establishing liability in the

first instance). The Defendants are, therefore, entitled to summary judgment on Plaintiff's individual-capacity claims against them.

Nor has the Plaintiff forecast any evidence that he was harmed pursuant to a WCJ custom or policy. Moreover, because there was no underlying constitutional violation with regards to the Plaintiff's housing reassignment, any official-capacity claim against the officers with regards to the housing reassignment necessarily fails. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point"); *Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 203 (4th Cir. 2008) ("supervisors ... cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages").

Accordingly, the Defendants' Motion for Summary Judgment will be granted on Plaintiff's failure to protect claim.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly

10

incompetent or those who knowingly violate the law." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence regarding any violation of his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

### C. Motion to Seal

Finally, the Defendants ask the Court to seal WCJ "Operating Procedures" and video footage because they contain non-public and confidential information that is protected from disclosure pursuant to N.C. Gen. Stat. §§ 153A-98, 132-1.4, 132-1.4A, and 132-1.7, and a Protective Order entered in this case. [Doc. 27 at 2; Doc. 27-1 at 3; *see* Doc. 20: Protective Order].

There is a "presumption under applicable common law and the First Amendment that materials filed in this Court will be filed unsealed." LCvR 6.1(a); *see Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (First Amendment right to access to court proceedings includes criminal and civil cases). However, a court has authority to seal documents before it based upon the court's inherent supervisory authority over its own files and records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The denial of access to documents under the First Amendment must be necessitated by a compelling government interest that is narrowly tailored to serve that interest. *See In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990). Before sealing judicial records, a court must identify the interest that overrides the public's right to an open court, and articulate supporting findings specific enough that a reviewing court can determine whether the order was properly entered. *See Press–Enterprise Co. v. Superior Ct. of Ca.*, 464 U.S. 501, 510 (1984). When addressing motions to seal, the Court must consider alternatives to sealing and

11

specify whether the sealing is temporary or permanent and also may redact such orders in its discretion. *See* LCvR 6.1.

The Court finds that WCJ's internal video footage contains confidential non-public information that is protected from disclosure, that the WCJ's interests in the confidentiality of its internal video footage overrides the public's right to an open court in this case, that there is no alternative that will adequately protect these concerns, and that permanently sealing the manually-video footage is warranted. Accordingly, the Motion to Seal with regards to the manually filed video footage (Summary Judgment Exhibit D) will be granted. [*See* Doc. 29: Notice of Manual Filing].

However, the Motion will be denied as to Defendants' request to seal WCJ "Operating Procedures." The Defendants do not clearly identify the exhibit(s) they are requesting to seal. Moreover, to the extent that the Defendants are referring to the classification, housing assignment, and administrative segregation polices that are attached to the Motion for Summary Judgment, Defendants appear to have waived their request by filing these exhibits on the Court's public docket. [*See* Doc. 28-2 at 8-13; Doc. 28-3 at 8-13; Doc. 28-4 at 7-12]. Moreover, these policies are interspersed with non-confidential documents such that it would be unduly burdensome for the Court to extract and seal only certain pages. This denial is without prejudice for the Defendants to file an Amended Motion to Seal that more fully describes their request and the grounds supporting the same.

V.     CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted and this action is dismissed with prejudice. The Defendants' Motion to Seal is granted in part and denied in part.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 28] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

2. The Defendants' Motion to Seal [Doc. 27] is **GRANTED IN PART AND DENIED IN PART** as stated in this Order.

3. The Clerk is respectfully instructed to **PERMANENTLY SEAL** Defendants' Motion for Summary Judgment Exhibit D (manually-filed docket entry 29).

4. The Clerk is respectfully instructed to enter a Clerk's Judgment, and to terminate this action.

**SO ORDERED.**

Signed: December 29, 2025

Matthew E. Orso
United States District Judge